IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AUDREY and KENNETH SHANTON ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 17 CV 3402 |
| v. ) | |
| ) | Judge Robert W. Gettleman |
| ST. CHARLES COMMUNITY ) | |
| UNIT SCHOOL DISTRICT 303, et al. ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs, Audrey and Kenneth Shanton, have brought a three- count complaint against defendants, Saint Charles Community Unit School District 303 ("District") and Saint Charles Educational Support Professionals with IEA-NEA ("Unions") alleging: (I) constructive discharge by Audrey against the District; (II) copyright infringement by Audrey and Kenneth against the District; and (III) breach of representation by Audrey against the Unions. Counts I and II are all that remain before the court, after Audrey dismissed her claims against the Unions. The District has moved to dismiss counts I and II for failure to state a claim. For the reasons described below, the court grants the District's motion as to count II and declines to exercise supplemental jurisdiction over count I.

**FACTS**[1]

Audrey worked for the District as a Computer Lab Assistant for almost 12 years. At no time was Kenneth an employee of the District. In 2005, Audrey and Kenneth developed a program that assesses and evaluates a variety of potential issues and subparts based on reading

---

[1] The facts are taken from plaintiffs' complaint and are presumed true for purposes of evaluating defendant's motion to dismiss. Murphy v. Walker, 51 F.3d 714, 717 (7th Cir. 1995).

barcodes.  The program was created outside of Audrey's workplace and without the knowledge of the District.  In 2007, Audrey used the program that plaintiffs wrote together to monitor a study hall at work.  The District became aware of the program in 2008 and asked Audrey to rewrite and regularly update the program.  In an unwritten agreement, Audrey agreed to rewrite the program and continue to regularly update it.  The program was used by the District without issue until the 2015-2016 school year and was updated by Audrey on more than one occasion prior to 2015.

At the beginning of the 2015 school year Audrey emailed several employees of the District when she did not hear from the school requesting an updated program.  Ms. Dandre, the assistant principal, replied informing Audrey that the school would no longer be using her program and would instead be using a commercial program.  Audrey requested that a copy of this new program be sent to her.  Upon receiving the new program Audrey felt the program was a reverse engineered version of the derivative program created in 2008.  After contentious discussions with the District about the program, Audrey ended her employment with the District and sued for constructive dismissal and copyright infringement.

## **LEGAL STANDARD**

Defendants move for dismissal based on Fed. R. Civ. P. 12 (b)(6), arguing that plaintiffs have pled themselves out of a claim for copyright infringement.  A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits.  CP Stone Fort Holdings, LLC v. Doe(s), 2016 WL 5934096, at *4 (N.D.Ill., March 22, 2017) (citing Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990)).  The court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor.  Sprint Spectrum L.P. v. City of Carmel, Ind., 361 F.3d 998, 1001 (7th Cir. 2004).  The complaint must allege

sufficient facts that, if true, would raise a right to relief above the speculative level, showing that the claim is plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 549, 555 (2007). To be plausible on its face the complaint must plead facts sufficient for the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

## ANALYSIS[2]

To win on a claim of copyright infringement the plaintiffs must show both: (1) ownership of a valid copyright; and (2) unauthorized copying. Hobbs v. John, 722 F.3d 1089, 1094 (7th Cir. 2013). The District argues that Audrey has no valid ownership in the 2005 version of the program because it is a work-for-hire and the copyright vested not in Audrey but in the District. The District further argues that because it has an ownership right in the program it is impossible for it to commit unauthorized copying. Plaintiffs argue in return that the 2005 version could not be a work for hire because it was created outside of Audrey's workplace and the District was not aware of its existence until two years later.

In its reply brief, the District argues that, even if it does not have ownership of the 2005 version of the program it does have ownership in the 2008 version of the program. According to the District, the 2008 version of the program qualifies as a derivative work and the ownership of that derivative works' copyright, at a minimum, partially vested with the District through the work for hire doctrine. Plaintiffs argue that Kenneth was not an employee of the District and that the 2008 version of the program was copyrighted solely by Kenneth and Audrey.[3]

---

[2] The court begins with count II of plaintiffs claim because it is the only federal claim before the court.
[3] Plaintiffs claim that both the 2005 and 2008 version were marked to show they were protected under copyright law, but they do not claim to have registered the programs under the Copyright Act.

To determine whether the plaintiffs have pled themselves out of their claim of copyright infringement the court first looks to whether the 2008 version of the program is a derivative work. If the court finds that the 2008 version, as pled, is a derivative work, the court then considers whether that work qualifies as a work-for-hire that would have its copyright ownership vest in the District.

There are two general principles for derivative work: "(1) the originality requirement for derivative works is not more demanding than the originality requirement for other works, and (2) the key inquiry is whether there is sufficient nontrivial expressive variation in the derivative work to make it distinguishable from the underlying work in some meaningful way." Schrock v. Learning Curve Intern., Inc., 586 F.3d 513, 521 (7th Cir. 2009). In the past, the 7th Circuit required that a derivative work differ in a substantial way from its predecessor. Gracen v. Bradford Exchange, 698 F.2d 300, 305 (7th Cir. 1983). It was later clarified by the court in Schrock that the Gracen standard was not to be interpreted as a higher standard than the originality requirement of the Copyright Act but rather that a derivative work be readily distinguishable from its predecessor. 586 F.3d at 516. Importantly, the level of creativity required for copyrightability is "extremely low." Feist Publications, Inc. v. Rural Telephone Service Co., Inc., 499 U.S. 340, 345 (1991). However, even if a derivative work is found, the copyright protecting it is thin and only applies to the continued use of the derivative work and does not cover the work taken from the original material. Schrock, 586 F.3d at 521.

The 2008 version of the program fulfills the originality requirement of a derivative work. The originality requirement is fulfilled for a derivative work by showing a change to the original work "in some meaningful way." Id. Plaintiffs describe the 2008 program as a system used to track student attendance that was programmed and updated at the request of the District. The

4

program then uses this information to develop patterns in students' attendance. The 2005 program, however, is described as being used to read barcode information. That program then uses this information to evaluate a variety of potential issues and subparts. Importantly, plaintiffs refer to the program that was rewritten for the District in 2008 as a "derivative" in paragraph 66 of their complaint. Given the changes between the two versions of the program described in the complaint and plaintiffs' own admission, when the program was rewritten in 2008, that new version was a derivative work open to new claims to its copyright, including the District's claim through the work-for-hire doctrine.

Because the 2008 version is a derivative work, the court must determine if it is covered under the work-for-hire doctrine. Co-owners of a copyright are not violating the Copyright Act if they unilaterally use or license the copyrighted material. Zuill v. Shanahan, 80 F.3d 1366, 1369 (9th Cir. 1996). A copyright's title vests initially with the author(s), however, with works made for hire, the employer or person for whom the work was prepared is considered the author for purposes of title unless otherwise expressly agreed to in a written instrument signed by the parties. 17 U.S.C. § 201. To determine whether a party is an employee under the work for hire doctrine the court must look to the common-law agency doctrine as established in Community for Creative Non-Violence v. Reid. 490 U.S. 730, 751-52 (1989). The Court in Reid looked to the Restatement, which contained a non-exhaustive list of criteria that can be used to establish or rule out an agency relationship, with no single factor being determinative. Id.

The court will look to the factors considered by the Court in Reid that are relevant to plaintiffs claim, including: (1) the hiring party's right to control the manner and means by which the product is accomplished; (2) the skill required to create the material; (3) the location of the work; (4) the duration of the relationship between the parties; (5) whether the hiring party has the

5

right to assign additional project to the hired party; (6) the method of payment of the hired party; and (7) the provision of employee benefits. Id. The court considers each of these factors in relation to Audrey, who according to the complaint, was the District's employee at all relevant times.

First, the court considers the District's right to control the manner and means by which the product is accomplished. Id. According to the complaint, Audrey had sole control over the updating of the program while it was used by the District, but she rewrote and updated the program at the request of the District in 2008. Second, Audrey claims that her title as a Computer Lab Assistant for the District gives her sufficient skill to rewrite and update the program in question. This claim however, indicates, that the 2008 program was created with the same skills that Audrey used while working for the District. Third, plaintiffs claim that the 2005 version of the program was made off site, but make no such claim for the 2008 rewritten program. Additionally, plaintiffs acknowledge that the 2008 program was made for the District's use. Fourth, Audrey worked for the District as a Computer Lab Assistant "for a period of almost 12 years." Beginning in 2008 and continuing until 2015, Audrey rewrote and updated the program, a period spanning seven years. Fifth, Audrey rewrote the 2008 version of the program at the request of the District. Additionally, Audrey updated the program every year at the District's request until the 2015-2016 school year. During this period, Audrey also continued her other duties, including answering IT questions. Sixth, plaintiffs do not claim that either Audrey or Kenneth was paid outside of Audrey's regular salary for rewriting or updating the program. Finally, Audrey had access to not only a long-term retirement program but also an employment union provided to her through employment by the District.

Two factors weigh in plaintiffs' favor: (1) Audrey maintained close control over the actual updating of the program following the rewrite in 2008; and (2) the program could have been rewritten off school premises.[4] The most relevant factors, however, weigh strongly in favor of an agency relationship. Audrey, an employee of the District for nearly 12 years, was not compensated in any way for the development of the program. Additionally, Audrey was benefiting from a retirement plan and union representation while rewriting the program and updating it. Most importantly the District could assign additional duties to Audrey, including rewriting and updating the program in 2008. The court finds, based on these facts, that an agency relationship existed and the 2008 derivative program was a work for hire owned, at least partially, by the District.

## Conclusion

For the reasons discussed above, defendant's motion (Doc. 56) is granted only in reference to count II. The court declines to exercise supplemental jurisdiction over count I.

**ENTER:** October 25, 2017

_____
**Robert W. Gettleman
United States District Judge**

---

[4] Plaintiffs neither allege nor deny that the program was rewritten or updated outside of the school.